# IN THE UNITED STATES DISTRICT COURT

## FOR DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE SUBPOENA ISSUED TO : <br> THE PNC FINANCIAL SERVICES GROUP, INC. : | Misc. No. _____ |
| ———————————————— : | |
| DATATREASUREY CORPORATION, : | |
| Plaintiff, : | |
| v. : | C.A. No. 2:05-cv-292 (E.D. Tex.) |
| BANK OF AMERICA, *et al.* : | |
| Defendants. : | |
| ———————————————— : | |
| DATATREASURY CORPORATION, : | |
| Plaintiff, : | |
| v. : | C.A. No. 2:06-cv-72 (E.D. Tex.) |
| WELLS FARGO COMPANY, *et al.* : | |
| Defendants. : | |

### THE PNC FINANCIAL SERVICES GROUP, INC.'S MOTION TO QUASH SUBPOENA FOR PRODUCTION OF DOCUMENTS AND FOR A PROTECTIVE ORDER

Pursuant to Federal Rule of Civil Procedure 45(c)(3), non-party The PNC Financial Services Group, Inc. ("PNC"), respectfully submits this Motion to Quash the Subpoena served by Bank of America Corp. ("BoA") on PNC on July 23, 2008, and for a protective order.

## I.    STATEMENT OF FACTS

PNC was previously a defendant in one of several patent infringement cases brought by DataTreasury Corporation ("DataTreasury"), *DataTreasury Corp. v. Wells Fargo & Company,* No. 2:06-cv-72 (E.D. Tex.).  On April 14, 2008, however, PNC and Plaintiff DataTreasury Corp. entered into a confidential settlement, and on April 23, 2008, PNC was dismissed from the case.

Although PNC is no longer a party, DataTreasury continues to litigate against additional defendants in the *Wells Fargo* case.

DataTreasury produced the PNC confidential settlement agreement to the defendants in the Wells Fargo case and a companion patent infringement case, *DataTreasury Corp. v. Bank of America, et al.,* No. 2:05-cv-292 (E.D. Tex.). DataTreasury produced that document as "Confidential—For Outside Counsel Only."

On July 23, 2008, BoA, a defendant in the *Bank of America* case, served a subpoena on PNC to produce documents. Ex. A.[1] BoA is not a party to the Wells Fargo case in which PNC was a party, but nevertheless issued the subpoena out of this Court using the caption of both the *Wells Fargo* case (in which it is not a party) and the *Bank of America* case (in which it is a party). BoA seeks the documents regarding PNC's settlement with DataTreasury ostensibly to support its defense to DataTreasury's damages case. BoA apparently did not, however, serve plaintiff DataTreasury with a copy of the PNC subpoena. Ex. B.

Although PNC is a Pennsylvania corporation with its principal place of business in Pittsburgh, BoA had the subpoena issued out of the District of Delaware. Ex. A. Even though PNC's headquarters are located at 1 PNC Plaza, 249 5th Ave., Pittsburgh, Pennsylvania, BoA's subpoena commands PNC to produce documents at 2008 Pennsylvania Ave., Wilmington, Delaware, 297 miles away from its headquarters. *Id.*

BoA's subpoena seeks 31 categories of documents. Ex. A at 8-10. Several of the document requests expressly seek documents that were exchanged between PNC and DataTreasury and are therefore in the possession, custody, or control of plaintiff DataTreasury.

---

[1] A true and correct copy of the Subpoena, redacted to remove the confidential information that BoA included in violation of the protective order, but including copies of the Protective Orders filed in the *DataTreasury Corp. v. Bank of America, et al.* (Case No. 2:05-cv-292 (E.D. Tex.)) and *DataTreasury Corp. v. Wells Fargo & Company, et al.* (Case No. 2:06-cv-72-DF (E.D. Tex.)) litigations, is attached hereto as Exhibit A.

*Id.*, Document Request Nos. 2-3 and 16-17.  That is, the documents that BoA's subpoena seeks in these requests are available from a party to the litigation.

Most of the document requests in the subpoena, however, are far broader, seeking documents "referring or relating to" or "constituting, evidencing or relating to" a particular subject matter. Ex. A, Document Request Nos. 1, 4-11, 13, 18-27 and 30-31.  These broad requests go far beyond documents exchanged between PNC and DataTreasury in their settlement negotiations, and include documents "referring or relating to" the DataTreasury settlement, the DataTreasury patents, ownership of the DataTreasury patents, licensing practices in the field of DataTreasury's patents, and prior art that PNC cited to DataTreasury.

A handful of the requests are directed to check and check image volumes.  Ex. A, Document Request Nos. 14-15 and 28-29.  In addition to the requests seeking check and check image volume documents that PNC disclosed to DataTreasury during their negotiations, id., Document Request Nos. 16-17, these broad requests seek check and check image volume documents back to 2000, not only for PNC but for all of PNC's affiliates or acquired entities as well.

BoA has stipulated that document production in response to the subpoena will be governed by the Protective Orders in the *Bank of America* and *Wells Fargo* cases.  Ex. A at 5, ¶6.  BoA has already violated those protective orders, however.  BoA discloses in the subpoena itself, a document not marked with any confidentiality legend, the amount that PNC paid to DataTreasury to settle that litigation.  *Id.*, Document Request Nos. 11-12 (amount redacted).

PNC's counsel raised its concerns about the subpoena with BoA's counsel.  Ex. C. PNC's counsel learned just yesterday, however, that BoA refused to withdraw the subpoena. Hence the need for this motion to quash.

## II.    ARGUMENT

### A.    BoA issued the subpoena from the wrong court and demanded production in the wrong district.

Fed. R. Civ. P. 45(c)(3)(A)(ii) requires that the document production be within 100 miles of where PNC "resides, is employed, or regularly transacts business in person." Requiring PNC to produce documents in Wilmington, at a location 297 miles away from its headquarters, where any responsive documents would be kept, would impose a significant burden on PNC. BoA should have issued the subpoena out of the Eastern District of Pennsylvania, not this Court, and should have required the document production in Pittsburgh or within 100 miles of Pittsburgh. Accordingly, BoA's subpoena should be quashed. *See* Fed. R. Civ. P. 45(c)(3)(A); *Kupritz v. Savannah College of Art & Design*, 155 F.R.D. 84, 88 (D.Del. 1994).

### B.    BoA did not serve Plaintiff DataTreasury with the subpoena.

Rule 45(b)(1) requires BoA to have served plaintiff DataTreasury with the subpoena before serving it on PNC. BoA did not do so, as DataTreasury first learned of the subpoena when it received notice and a copy from PNC. Because BoA did not serve the subpoena on Plaintiff in the underlying litigation, the subpoena should be quashed.

### C.    Bank of America should seek the requested discovery from Data Treasury because DataTreasury is a party to the underlying litigation.

DataTreasury is the most appropriate party from whom the discovery sought per the subpoena should be obtained. DataTreasury is the Plaintiff in both the litigation in which PNC was a party and the litigation in which BoA is a party. PNC is no longer a party to the *Wells Fargo* case, and never was a party to the *Bank of America* case.

Courts have found that it is more appropriate to obtain discovery from a party to a suit than from third parties. In *MGM Studios, Inc. v. Grokster*, 218 F.R.D. 423, 424-25 (D. Del. 2003), for example, the court quashed plaintiffs' subpoena seeking information from a third

party because some of the plaintiffs could obtain the discovery against a party in another infringement case, a more appropriate avenue for discovery. Nor is it relevant that Plaintiff DataTreasury may be resisting discovery. *Schaaf v. SmithKline Beecham Corp.*, 233 F.R.D. 451, 455 (E.D.N.C. 2005) (plaintiffs' two subpoenas seeking documents from third parties were quashed because "If the corporate defendants fail to produce responsive documents or make what plaintiff believes are unfounded objections, then such conduct should be the subject of motions practice in the district court where the litigation is pending. Such conduct, however, should not result in third-party subpoenas."). BoA should seek the requested discovery from DataTreasury.

### D.    BoA's subpoena seeks irrelevant and cumulative discovery.

The Federal Rules of Civil Procedure limit the scope of discovery to information that "is relevant to any party's claim or defense" and "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Most of BoA's document requests violate Rule 26(b)(1) because they seek documents which were not part of the settlement negotiations between PNC and DataTreasury and are therefore not relevant to any party's claim or defense or reasonably calculated to lead to the discovery of admissible evidence. *See* Ex. A, Document Request Nos. 1, 5-11, 13, 16-27, and 30-31. Specifically, these document requests are overbroad because they seek documents "referring or relating to" or "constituting, evidencing or relating to" a particular subject matter rather than documents sufficient to confirm a fact. *Id.* For example, Document Request No. 5 seeks "Documents and communications referring or relating to settlement of litigation or threats of litigation regarding any Patent-in-suit." *Id.* at 8. There simply is no basis for BoA to contend that all documents in PNC's possession, custody, or control referring to litigation regarding a Patent-in-suit but not exchanged between PNC and DataTreasury during settlement negotiations or otherwise addressed during these negotiations are

either relevant to a party's claim or defense or reasonably calculated to lead to the discovery of admissible evidence in the underlying litigation. Discovery requests cannot be based on speculation. *Collens v. City of New York*, 222 F.R.D. 249, 254 (S.D.N.Y. 2004). BoA has the burden to establish the relevance of these apparently irrelevant document requests. See *Etienne v. Wolverine Tube, Inc.*, 185 F.R.D. 653, 657 (D. Kan. 1999) ("When the relevancy of propounded discovery is not apparent its proponent has the burden . . . to show the discovery relevant.").

A court *must* limit the extent of discovery when "the discovery sought is unreasonably cumulative or duplicative or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(c)(i). To the extent that some of the documents requested per BoA's subpoena are relevant to any claims or defenses or reasonably calculated to lead to the discovery of admissible evidence because they were exchanged between PNC and DataTreasury during settlement negotiations, these documents are already in the possession of DataTreasury. Thus, this discovery is unreasonably cumulative and can be obtained from DataTreasury, a more convenient, less burdensome, and less expensive source. Because DataTreasury is a party to the underlying litigation, it is already involved in the process of producing documents and will incur little inconvenience, burden, and expense by producing any additional relevant documents requested per BoA's subpoena. By contrast, PNC is no longer a party to the underlying litigation and therefore had no expectation of being required to produce documents in this litigation. Complying with the subpoena would require PNC to locate documents that may have been sent into storage and produce these documents at a location 297 miles away from its headquarters and thereby to incur significant inconvenience, burden, and expense. See *Schaaf v. SmithKline Beecham Corp.*, 233 F.R.D. at 454-55 (The court found that documents sought per subpoenas should have been obtained from defendant party

rather than from third parties because this would be more convenient, less burdensome, or less expensive.).

BoA's subpoena should be quashed because the documents requested per the subpoena are either irrelevant or cumulative.

### E.   BoA's subpoena violates Federal Rule of Civil Procedure 45 by subjecting PNC to undue burden and expense.

A party "responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense." Fed. R. Civ. P. 45(c)(1). BoA has violated FRCP 45(c)(1) by failing to take the required reasonable steps.

BoA's subpoena imposes an undue burden and expense on PNC because the document requests (1) are overbroad and (2) seek documents that are cumulative and can be obtained from a more convenient, less burdensome, or less expensive source. As discussed above, many of the document requests are overbroad in that they seek documents which were not part of the settlement negotiations between PNC and DataTreasury and are therefore not relevant to any party's claim or defense or reasonably calculated to lead to the discovery of admissible evidence. The document requests which were exchanged between PNC and DataTreasury during settlement negotiations and may be relevant to a party's claim or defense or reasonably calculated to lead to the discovery of admissible evidence can be obtained from DataTreasury, a party to the underlying litigation and therefore a more convenient, less burdensome, and less expensive from which to obtain the documents than PNC. By serving these broad and cumulative document requests, when relevant, responsive documents are already in the possession of DataTreasury, a party to the underlying litigation, BoA has not taken reasonable steps to avoid imposing undue burden or expense on PNC. On the contrary, BoA has deliberately imposed undue burden and expense on PNC.

BoA's subpoena must be quashed because "A court *must* quash or modify a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iv).

**F.    The document requests violate the Protective Orders issued in the underlying actions.**

BoA has stipulated that documents produced in response to the subpoena will be governed by the Protective Orders in the *DataTreasury Corp. v. Bank of America, et al.* (Case No. 2:05-cv-292 (E.D. Tex.)) and *DataTreasury Corp. v. Wells Fargo & Company, et al.* (Case No. 2:06-cv-72-DF (E.D. Tex.)) litigations.  Ex. A at 5, ¶6.  BoA has nonetheless violated the provisions of these Protective Orders by including in the subpoena itself information that PNC considers confidential and DataTreasury produced in discovery designated as "Confidential." See Ex. A at *DataTreasury Corp. v. Bank of America, et al.* Protective Order at 1 and at *DataTreasury Corp. v. Wells Fargo & Company, et al.* Protective Order at 1.  Specifically, the document requests refer to "a one-time payment in the amount of $" . . . "paid by PNC to DataTreasury. Ex. A., Document Request Nos. 11-12 (redacted).

By violating the provisions of the Protective Orders BoA has indicated that it does not respect PNC's need to maintain the confidentiality of information that it has clearly designated as "Confidential."  PNC therefore has no assurance that BoA would protect any additional confidential information provided by PNC in response to the subpoena, as required by the Protective Order.  Therefore, PNC should not be required to produce documents responsive to the subpoena.

## III.   CONCLUSION

For all of the foregoing reasons, BoA's subpoena for document production from PNC should be quashed.

PROCTOR HEYMAN LLP

/s/ Kurt M. Heyman
Kurt M. Heyman (# 3054)
E-mail: kheyman@proctorheyman.com
Patricia L. Enerio (#3728)
E-mail: penerio@proctorheyman.com
1116 West Street
Wilmington, DE 19801
(302) 472-7300

Attorneys for Non-Party
The PNC Financial Services Group, Inc.

OF COUNSEL:

HOWREY LLP
William C. Rooklidge
4 Park Plaza, Suite 1700
Irvine, CA 92614
(949) 759-3904

Dated: August 22, 2008

# EXHIBIT A

**TO THE PNC FINANCIAL SERVICES GROUP, INC.'S MOTION TO QUASH**
**SUBPOENA FOR PRODUCTION OF DOCUMENTS AND FOR A PROTECTIVE ORDER**

Issued by the

# United States District Court

## DISTRICT OF DELAWARE

### SUBPOENA IN A CIVIL CASE

DATATREASURY CORPORATION

v.

BANK OF AMERICA, et al.

CASE NUMBER: 2:05-cv-292 (E.D. Tex.)

DATATREASURY CORPORATION

v.

WELLS FARGO COMPANY, et al.

CASE NUMBER: 2:06-cv-72 (E.D. Tex.)

TO: The PNC Financial Services Group, Inc.
    c/o Corporation Service Company
    2711 Centerville Rd., Suite 400
    Wilmington, DE 19808

☐   YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
    See attached Schedule "A"

| PLACE:   National Legal, 2008 Pennsylvania Ave., Suite 207, Wilmington, DE 19806 | DATE AND TIME August 22, 2008, 9:00 a.m. |
|---|---|

☐   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) *[signature]* Kelly K. Vickers Attorney for Defendant Bank of America Corporation | DATE July 23, 2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER  Kelly K. Vickers, Fish & Richardson P.C., 1717 Main Street, Suite 5000, Dallas, TX 75201; 214-747-5070

## PROOF OF SERVICE

| SERVED | DATE | PLACE |
|---|---|---|
| | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

| DATE | SIGNATURE OF SERVER |
|---|---|
| | |

| | ADDRESS OF SERVER |
|---|---|
| | |

Rule 45, Federal Rules of Civil Procedure, Parts c & d:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copy of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to the inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held; or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE A

I.    **DEFINITIONS**

1.    "PNC" means The PNC Financial Services Group, Inc., PNC Bank, N.A., PFPC Worldwide Inc., and all predecessors (merged, acquired, or otherwise), successors, subsidiaries, parents, joint ventures, divisions, and affiliates thereof, and all partners, directors, officers, agents, employees, servants, consultants, representatives, attorneys, and other persons acting on behalf of PNC and/or any such predecessors, subsidiaries, parents, joint ventures, and/or affiliates.

2.    "You" and "yours" means The PNC Financial Services Group, Inc., PNC Bank, N.A., PFPC Worldwide Inc., and all predecessors (merged, acquired, or otherwise), successors, subsidiaries, parents, joint ventures, divisions, and affiliates thereof, and all partners, directors, officers, agents, employees, servants, consultants, representatives, attorneys, and other persons acting on behalf of PNC and/or any such predecessors, subsidiaries, parents, joint ventures, and/or affiliates.

3.    "Lawsuit" means the lawsuits pending in the U.S. District Court for the Eastern District of Texas, styled *DataTreasury Corporation v. Bank of America, et al.*, Case No. 2:05-CV-292 and *DataTreasury Corporation v. Wells Fargo & Company, et al.*, Case No. 2:06-CV-72-DF.

4.    The "'007 Patent" means U.S. Patent No. 5,265,007.

5.    The "'868 Patent" means U.S. Patent No. 5,717868.

6.    The "'759 Patent" means U.S. Patent No. 5,583,759.

7.    The "'778 Patent" means U.S. Patent No. 5,930,778.

8.    The "'988 Patent" means U.S. Patent No. 5,910,988.

9.    The "'137 Patent" means U.S. Patent No. 6,032,137.

10.    "Patents-in-Suit" means any patent asserted in the Lawsuit, including, but not limited to, the '007 Patent, the '868 Patent, the '759 Patent, the '778 Patent, the '988 Patent, and the '137 Patent collectively and individually.

11.    "DataTreasury" means DataTreasury Corporation and any and all predecessors-in-interest in the Patents-in-Suit, including without limitation CSP Holdings, Inc. and CSP Holdings, LLC; any and all predecessors-in-name to Plaintiff DataTreasury Corporation; any and all past and present domestic or foreign parent, sister, affiliate, subsidiary, partnership, joint venture, predecessor-in-interest, successor-in-interest, division, department, corporate subunit, or other business entity; and any and all past and present officers, directors, agents, employees, consultants, attorneys, and other persons or entities acting or purporting to act on behalf of any of the foregoing.

12. "Huntington" means Huntington Bancshares, Inc. and any and all past and present domestic or foreign parent corporations, subsidiaries, divisions, departments, sisters or affiliates, partners or partnerships, predecessors or successors-in-interest companies or proprietorships; any joint ventures to which Huntington is a party, including, but not limited to, (The) Huntington National Bank and Huntington Services Company, and all of Huntington's present and former officials, executives, officers, directors, employees, managing agents and/or all other persons or entities, associated with, or purporting to act on behalf of or in concert with, or who are subject to the direction or control of any of the foregoing, to the extent that they are or have been involved in any manner with the subject matter of the requests herein.

13. The term "Affiliate" shall be defined as that term is defined in the "Settlement, Release and License Agreement" entered into between DataTreasury and PNC on or about April 14, 2008.

14. The term "Acquired Entity" shall be defined as that term is defined in the "Settlement, Release and License Agreement" entered into between DataTreasury and PNC on or about April 14, 2008.

15. The term "Document" has the broadest possible meaning ascribed to it under the Federal Rules of Civil Procedure. "Document" includes any non-identical copy or copies, which differ from the original for any reason (e.g., draft copy or copy containing notes thereon). "Document" further means any kind of printed, recorded, written, electronic, graphic or photographic matter (including tape recording), however printed, produced, reproduced, coded or stored, of any kind or description, whether sent or received; including originals, copies, reproductions, facsimiles, drafts, and including, without limitation: papers, books, accounts, letters, telegrams, cables, telex messages, memoranda, notes, notations, work papers, routing slips, intra and interoffice communications, transcripts, minutes, reports and recordings of conversations, interviews, conferences, meetings, affidavits, statements, lists, tabulations, data sheets, computer tapes and discs, magnetic tapes, electronic mail, punch cards, computer printouts, data processing input and output, computer files, computer programs, computer program coding sheets, microfilms, microfiche, including metadata / embedded data; models, photographs, drawings, sketches, blueprints, objects and other tangible things; correspondence, whether written or received; and things similar to any of the foregoing, regardless of their author or origin. "Document" also includes without limitation, all forms of recorded information including computer accessible information whether stored electronically, magnetically, optically or otherwise, the original and all drafts of all written or graphic matter, however stored, produced, or reproduced, of any kind or description, whether or not sent or received, and all copies thereof which are different in any way from the original (whether by interlineation, receipt stamp, notation, indication of copies sent or received, or otherwise); all computer data bases and information stored therein or any other written, recorded, transcribed, punched, taped, filmed or graphic matter of which you have or have had possession, custody or control, or of which you have knowledge. "Document" also shall include, without limitation, "writings and recordings" as defined by Federal Rule of Evidence 1001 and all copies and drafts

thereof, no matter how prepared and whether used or not. To be clear, the term "document" or "documents" as used herein includes, but is not limited to, all E-Mails and attachments to E-Mails, Microsoft Word, WordPerfect, Excel, PowerPoint, pdf, tiff, jpg, and all other files, whether printed or in electronic form; and each of these requests require the production of said files in their native form.

16.    In the context of a Request, the singular shall mean the plural, and vice versa, masculine gender shall mean the feminine, and vice versa, and the word "or" shall be deemed to include the word "and," and vice versa, so as to bring within the scope of the Requests any information, document or thing that by contrary construction would be excluded.

17.    "Any" and "all" shall each be construed to mean "any and all."

18.    "And" and "or" shall be construed both conjunctively and disjunctively and each shall include the other whenever such construction will serve to bring additional information within the scope of these Requests.

19.    "Communication" shall mean any transmission of information by one or more persons and/or between two or more persons by any means, including but not limited to, telephone conversations, letters, telegrams, teletypes, telecopies, facsimiles, electronic mail, other computer linkups, written memoranda, and face-to-face conversations.

20.    "Concerning" shall mean referring to, relating to, containing, embodying, mentioning, evidencing, constituting or describing.

21.    "Each" or "every" shall mean each and every.

22.    "Entity" or "entities" includes natural persons, proprietorships, partnerships, firms, corporations, public corporations, municipal corporations, governments (including foreign national governments, the government of the U.S. or any state or local government), all departments and agencies thereof, any governmental agencies of any country, political subdivisions, groups, associations, or organizations.

23.    "Constituting" or "evidencing" means showing, proving, indicating, establishing, or being probative of the existence or nature of the subject of the document requests.

24.    "Including" and "include" as used herein are illustrative and shall be construed to mean "without limitation."

25.    "Meeting" means any coincidence of, or presence of, or telephone, television, radio or other electronic communication between or among persons, whether such was by chance or pre-arranged, informal or formal.

26.    "Person" refers to any natural person, association, corporation, partnership, firm, joint venture, sole proprietorship, business agency or other legal or business entity of any kind and the acts and knowledge of any such person are defined to include the acts and knowledge of that person's directors, officers, members, employees, representatives, agents and attorneys.

27.    The terms "refer to," "in regard to," and "related to," mean to consist of, refer to, pertain to, reflect, or constitute in any way logically or factually connected with the matter discussed.

28.    "Thing" shall be defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, tangible objects of any type, composition, construction or nature, such as models, prototypes and samples of any device or apparatus.

## II.    INSTRUCTIONS

1.    With respect to each document request, identify whether any documents responsive to the request exists, whether you will produce such document, when and where the documents will be produced, if different from the time and place specified herein, and where such documents are usually kept.

2.    The scope, definitions, and instructions applicable to these discovery requests are coextensive with the applicable sections of the Federal Rules of Civil Procedure. Accordingly, each discovery request requires the production of information to the fullest extent permitted under the Federal Rules of Civil Procedure. Nothing herein shall be construed to exceed the applicable sections of the Federal Rules of Civil Procedure.

3.    If a request calls for the production of a document as to which you claim any privilege or any other ground for withholding or otherwise failing to produce any requested document, please provide, at the time at which the other documents are produced, a log which, separately for each document not produced, sets forth: (1) the identity of the author thereof, the parties thereto, and any person who helped in the preparation of the document; (2) the title or other identifying data sufficient to describe the document for purposes of a subpoena duces tecum; (3) the date of the document, or if no date appears thereon, the approximate date; (4) the identity of each person to whom the document, or any copy thereof, was transmitted, shown, or disclosed by any entity; (5) the identity and location of each person having or last having possession, care, custody, or control of the document and each of any copies thereof; (6) the purpose for which the document was prepared; (7) the non-privileged contents of the documents, if any portion thereof is not subject to a claim of privilege; and (8) each and every fact or basis on which you claim such a privilege or ground for your refusal to produce, in such detail as would be required for the defendants to test the claim of privilege on a motion to compel.

4.    In producing documents, please produce them in their original file folders, if any, or in lieu thereof, attach to the set of documents produced from a given file a photographic or electrostatic duplicate of all written or printed material on the original file folder. In addition, documents shall be produced in the same sequence as they are contained or found in the original file folder. The integrity and internal sequence of the requested documents within each folder shall not be disturbed. Under no circumstances shall documents from any file folder be commingled with documents from any other file folder.

5.    If any of the Requests would require PNC to produce a document or thing that once existed in PNC's possession or under its custody or control but which PNC no longer has in its possession or under its custody or control, identify for each such document and thing:

    a)    the type of document;

    b)    the title and a description of the subject matter;

    c)    the date upon which it ceased to exist;

    d)    the circumstances under which it ceased to exist;

    e)    the identities of all persons having knowledge of the circumstances under which it ceased to exist; and

    f)    the identities of all persons having knowledge of the contents of the document.

6.    Documents produced in response to this subpoena will be used in *DataTreasury Corporation v. Bank of America, et al.*, Case No. 2:05-CV-292 and *DataTreasury Corporation v. Wells Fargo & Company, et al.*, Case No. 2:06-CV-72-DF. Further, documents produced in response to this subpoena shall be governed by the respective Protective Orders, copies of which were served with this subpoena.

7.    Unless otherwise noted, these requests are limited to documents and communications from January 1, 2005 through the present.

## III.    DOCUMENT REQUESTS.

1.    Documents and communications referring or relating to any license, assignment or other agreement covering any Patent-in-suit, including without limitation drafts and executed versions, between You and DataTreasury.

2.    Documents and communications between You and DataTreasury referring or relating to the Patents-in-suit.

3.    Documents and communications between You and DataTreasury referring or relating to negotiations of licenses of any Patent-in-suit.

4.    Documents and communications between You and any third-parties referring or relating to negotiations of licenses of any Patent-in-suit.

5.    Documents and communications referring or relating to settlement of litigation or threats of litigation regarding any Patent-in-suit.

6.    Documents and communications referring or relating to ownership interests or assignment of any rights of any Patent-in-suit.

7.    Documents and communications referring or relating to licensing practices in the field of the Patents-in-Suit.

8.    Documents and communications referring or relating to actual or anticipated payments, royalties, or licensing fees for license or use of any Patent-in-suit.

9.    Documents and communications referring or relating to any agreements, contracts or arrangements with DataTreasury.

10.    Documents and communications referring or relating to any compensation paid by You to DataTreasury, whether actual, projected, or otherwise.          **REDACTED**

11.    Documents and communications referring or relating to a one-time payment in the amount of $██████████ U.S. dollars) paid by You to DataTreasury, whether actual, projected, or otherwise.

12.    Documents and communications sufficient to constitute or evidence the basis of the one-time payment in the amount of $████████████ U.S. dollars) paid by You to DataTreasury.          **REDACTED**

13.    Documents and communications referring or relating to any settlement agreements between You and DataTreasury, including without limitation, drafts of settlement agreements exchanged with third-parties.

14.    Documents sufficient to confirm the check volumes of PNC from January 1, 2000, or thereafter, whether such volumes are actual, projected or otherwise.

15. Documents sufficient to confirm the check image volumes of PNC from January 1, 2000, or thereafter, whether such volumes are actual, projected or otherwise.

16. Documents and communications between You and DataTreasury referring or relating to Your check volumes from January 1, 2000, or thereafter, whether such volumes are actual, projected or otherwise.

17. Documents and communications referring or relating to check volume data from January 1, 2000, or thereafter, whether such volumes are actual, projected, or otherwise, provided to DataTreasury in the course of negotiations of any agreements between PNC and DataTreasury.

18. Documents and communications referring or relating to any actual or anticipated payments, royalties, or licensing fees for license or use of any Patent-in-suit paid by PNC to DataTreasury pursuant to the terms of any agreements between PNC and DataTreasury.

19. Documents and communications referring or relating to any payment schedules or projected payment schedules between PNC and DataTreasury.

20. Documents and communications referring or relating to the royalty rate of any agreements between PNC and DataTreasury.

21. Documents and communications constituting, evidencing or relating to any licenses between You and DataTreasury related to the capture, transmission, storage, or retrieval of images of documents, checks, or financial institutions.

22. Documents and communications referring or relating to the basis of any royalty calculation included in any agreements between You and DataTreasury.

23. Documents and communications referring or relating to negotiations or discussions between PNC and DataTreasury of any royalty rate on the basis of check volume.

24. Documents and communications referring or relating to PNC's requirement to mark its products or devices with notice of a license between PNC and DataTreasury.

25. Documents and communications constituting, evidencing or relating to any license, assignment or other agreement covering any Patent-in-suit between You and any third-parties.

26. Documents and communications referring or relating to prior art cited by PNC to DataTreasury.

27. Documents and communications referring or relating to any license, assignment or other agreement covering any Patent-in-suit, including without limitation drafts and executed versions, between You and any third-parties.

28. Documents and communications sufficient to confirm the check volumes of any Affiliates of PNC from January 1, 2000, or thereafter, whether such volumes are actual, projected or otherwise.

29. Documents and communications sufficient to confirm the check volumes of any Acquired Entity of PNC from January 1, 2000, or thereafter, whether such volumes are actual, projected or otherwise.

30. Documents and communications referring or relating to any payment schedules or projected payment schedules between any Acquired Entity of PNC and DataTreasury.

31. Documents and communications referring or relating to actual or anticipated payments, royalties, or licensing fees for license or use of any Patent-in-suit paid by any Acquired Entity of PNC to DataTreasury pursuant to the terms of any agreements between PNC and DataTreasury.

90294923.doc

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

DATATREASURY CORPORATION
*Plaintiff*

vs.

BANK OF AMERICA CORPORATION;
BANK OF AMERICA, NATIONAL
ASSOCIATION,
*Defendant*

§
§
§
§
§
§
§
§
§
§
§

Civil Action No. 2:05cv292-DF
JURY

## PROTECTIVE ORDER

Pursuant to Federal Rule of Civil Procedure 26(c), the parties agree to the entry of this

Protective Order (the "Order") to facilitate and expedite discovery in this action.

IT IS ORDERED THAT:

1.    **Confidential Information.** Upon a determination by any party or non-party from

whom discovery is sought (the "Designating Party") that any documentation or thing being

produced or disclosed, whether formally or informally, including, but not limited to,

a.    initial and supplemental disclosures;
b.    answers to interrogatories;
c.    documents;
d.    transcripts of depositions;
e.    responses to requests for admissions; and
f.    any other discovery or disclosure made in this litigation,

contains a trade secret or other proprietary or confidential business, technical, sales, marketing,

financial, or other commercial information that the Designating Party would not disclose to third

parties or that it would cause third parties to maintain in confidence, the Designating Party may

designate such document or thing "Confidential" (collectively, "Confidential Information").

Confidential Information further includes, but is not limited to: technical information such as product design and operation and manufacturing techniques or processing information, trade secrets, formulas, research and development information, source code, object code, customer lists, sales and cost information, and pricing information, patent license agreements, or information that was generated in connection with, or reveals the content of, patent licensing negotiations; information that a party has treated as confidential and is not subject to public disclosure; information within the definition of trade secret as set forth in Section 1(4) of the Uniform Trade Secret Act (1985); and any other information that would qualify as Confidential pursuant to Federal Rule of Civil Procedure 26(c) or any other legal standard.

Non-parties may invoke the protection of this Order for documents and deposition testimony and exhibits provided in connection with this litigation, including but not limited to documents and deposition testimony and exhibits provided in response to subpoenas served on those third parties, and all confidential information of non-parties as contained in such documents, depositions and exhibits shall be protected hereunder in the same manner as the confidential information of the parties to this lawsuit as long as the non-party agrees to be bound by this Order and those subsequent amendments to this Order concerning which the non-party has received written notice and an opportunity to seek a protective order.

2.    **Designation.** The Designating Party shall identify such Confidential Information by affixing to it, in a manner that shall not interfere with its legibility, the words "CONFIDENTIAL," "ATTORNEYS' EYES ONLY," "PROTECTED MATERIAL," "FOR OUTSIDE COUNSEL ONLY" or "FOCO" (collectively, "CONFIDENTIAL") on all or any part of the document or thing. Any summary, compilation or copy of any document or thing so designated as "CONFIDENTIAL" shall be treated as provided by this Order. The

2

"CONFIDENTIAL" designation shall, when practicable, be made prior to, or contemporaneously with, production or disclosure, except in the case of depositions, which shall be designated as set forth in ¶ 12. An inadvertent failure to designate Confidential Information shall be dealt with in accordance with the terms of ¶ 19.

3.     **Use or Disclosure of Confidential Information**. No party, counsel, or other person receiving any document or thing that is designated as "CONFIDENTIAL" in accordance with ¶¶ 1 and 2 of this Order (the "Receiving Party") shall use, disclose, or permit the use or disclosure of any such Confidential Information to any other person or entity, except to the following:

a.     This Court and its personnel consistent with the terms of ¶¶ 7 and 14.

b.     Outside Counsel for the respective parties in the above-identified litigation and in other litigation brought by DataTreasury concerning the patents-in-suit and their clerical, litigation support and paralegal employees. As used herein "Outside Counsel" shall mean attorneys in the respective firms for the respective parties.

c.     Any Expert retained by, or at the direction of, Outside Counsel solely for the purpose of advising and assisting such counsel in the preparation or trial of this action, subject to ¶¶ 8 and 9.

d.     Court reporters taking testimony and their necessary stenographic, videographic, and clerical personnel.

e.     Interpreters and translators retained by Outside Counsel for the purpose of this action, subject to ¶ 10.

f.     Consistent with ¶ 11, any deponent who is not an agent, officer or employee of, or expert to the Receiving Party except as authorized by ¶ 3(e).

3

g.       Attorneys in the Receiving Party's legal department, provided that, in the good faith judgment of the Receiving Party's Outside Counsel, the attorneys are reasonably necessary to that party's prosecution or defense of this action. Each party shall designate the attorneys who will receive documents and things under this paragraph and must notify the Designating Party of the identities of each such employee at least eight (8) business days before the disclosure of Confidential Information to such attorneys. No disclosure of Confidential Information shall be made to other employees who are not otherwise authorized to receive Confidential Information under this Order.

h.       Personnel of third party vendors engaged by a party or by Outside Counsel for a party to assist in (i) the coding, imaging or other management of documents produced in discovery in this litigation; (ii) the preparation of demonstrative exhibits or other visual aids for presentation at a hearing or trial; or (iii) jury research and analysis, provided that such personnel of third party vendors shall not be employees of a party.

4.       **Undertaking.** Prior to any disclosure pursuant to ¶ 3(c), and authorized pursuant to ¶¶ 8 and 9, each testifying and consulting Expert to whom such disclosure is to be made shall execute the Confidentiality Agreement annexed hereto as Exhibit A ("Confidentiality A Agreement"). Outside Counsel to whom any disclosure is made pursuant to ¶ 3(b) and each person to whom any disclosure is made pursuant to ¶¶ 3(e), 3(g) or 3(h) shall execute the Confidentiality Agreement annexed hereto as Exhibit B ("Confidentiality B Agreement"). The Confidentiality Agreements shall be maintained by Outside Counsel for the Receiving Party with whom such persons are affiliated or by whom they are retained, and such counsel shall provide a copy of each executed Confidentiality A or B Agreement to all counsel of record. Further, prior to disclosure to any duly authorized deponent to whom disclosure is made pursuant to ¶ 3(f),

4

each such deponent shall execute, as appropriate, a Confidentiality A or B Agreement. Such Confidentiality Agreements executed by a deponent shall be retained by the party first noticing the deposition.

5.    **Outside Counsel's Communication with Client.**  Nothing in this Order shall preclude or impede Outside Counsel's ability to communicate with or advise his or her client based on his or her review and evaluation of Confidential Information produced by the opposing party, provided that such communications or advice shall not disclose or reveal such Confidential Information.

6.    **Disclosure to Author or Recipient.**  Notwithstanding any other provisions, nothing in this Order shall prohibit Outside Counsel for a party from disclosing a document or thing designated as "CONFIDENTIAL" to any person whom the document or thing clearly identifies as an author, addressee or carbon copy recipient of such document or thing. Regardless of its designation, if a document or thing makes reference to the actual or alleged conduct or statements of a person, Outside Counsel may discuss such conduct or statements with such person, provided that such discussions do not directly or indirectly disclose or reveal any portion of the document or thing other than that which specially refers to such conduct or statement. Nothing herein is intended to permit counsel to contact an employee of the other party or any other person who is represented by counsel.

7.    **Filings with This Court.**  To the extent that any documents, information, or things designated as "CONFIDENTIAL" are to be filed with this Court, each such document and thing shall be filed under seal with the Clerk of this Court in an envelope marked "SEALED." The cover page of the filed document shall contain the case caption and shall be marked:

"CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER: This [receptacle] contains documents or things that are the subject of a Protective Order of this Court and cannot be opened or its contents made available to anyone other than counsel of record for the parties or the Court and its personnel."

Notwithstanding the provisions of this ¶ 7, the mere inclusion in a pleading of factual information derived from documents or things designated "CONFIDENTIAL" will not require that pleading be filed under seal if the parties agree in writing prior to filing the pleading that the factual information actually contained in that pleading would not itself be properly subject to such designation.

8.     **Disclosure to Experts.**  Subject to ¶ 9, Outside Counsel for the Receiving Party may disclose Confidential Information to Experts who are assisting in the preparation for and/or trial of this action. Prior to disclosing any Confidential Information to any Expert, Outside Counsel for the Receiving Party shall determine that disclosure to an Expert of particular Confidential Information is, in that counsel's good faith judgment, reasonably necessary to the Receiving Party's prosecution or defense of this action.

9.     **Opportunity to Object to Proposed Expert.**  At least eight (8) business days prior to disclosure of any of the Designating Party's Confidential Information to an Expert, the Receiving Party shall provide the Designating Party written notice stating the name and address of the Expert; a copy of the Expert's Confidentiality A Agreement; a copy of the Expert's current resume showing his/her education and employment for the last four (4) years; and a list of the Expert's patents and/or publications for the last ten (10) years (Expert's Background Information).

(a)     If, within the eight (8) business day period, the Designating Party objects

6

to the proposed disclosure to the Expert, the Parties shall proceed to resolve the matter informally. Within five (5) days of making an objection, the Parties shall agree on how to proceed or the objecting party may file a Motion with this Court identifying the ground for the objection and the Expert's background information.

(b)     Disclosure shall not be made until and unless this Court orders disclosure to that Expert. This Court shall deny the Designating Party's objection unless the Designating Party shows good cause why the proposed disclosure should not be permitted.

(c)     If the objecting party does not file a Motion within five (5) days of making an objection to the disclosure, the objection shall be deemed waived and the Receiving Party shall be allowed to disclose the Confidential Information to the Expert.

10.     **Opportunity to Object to Proposed Interpreter or Translator.** At least eight (8) business days prior to disclosure of any of the Designating Party's Confidential Information to an interpreter or translator, the Receiving Party shall provide the Designating Party written notice stating the name and address of the interpreter or translator, a copy of the interpreter's or translator's Confidentiality B Agreement, and a copy of the interpreter's or translator's current resume showing his/her education and certifications, employment and professional activities. If, within the eight (8) business day period, the Designating Party objects to the proposed disclosure to the interpreter or translator, disclosure shall not be made until and unless this Court orders disclosure to that interpreter or translator. This Court shall deny the Designating Party's objection unless the Designating Party shows good cause why the proposed disclosure should not be permitted.

7

11.    **Use of Confidential Information at Depositions.** Except as otherwise approved by the Designating Party or by an order of this Court, a Receiving Party may use Confidential Information in deposing only (a) an individual who has had or who is eligible to have access to the Confidential Information by virtue of his or her employment with the Designating Party, (b) an individual identified in the Confidential Information as an author, addressee, or copy recipient of such information, (c) an individual who, although not identified as an author, addressee, or copy recipient of such Confidential Information, has seen such Confidential Information in the ordinary course of business, or (d) an Expert duly qualified under ¶¶ 8 and 9 (who shall first have executed the Confidentiality A Agreement).

12.    **Attendees at Confidential Information Depositions and Designations of Deposition Testimony.** No one may attend, view, or review the transcripts of the portions of any depositions at which Confidential Information is shown or discussed, other than those persons authorized to have access to Confidential Information pursuant to ¶¶ 3 (a) - (h). Such depositions shall be designated as "CONFIDENTIAL" as soon as practicable by stating in the record such designation. Subject to the provisions of this Order, the parties agree that certain deposition testimony may be transmitted via a live webcast or other technology to persons authorized to have access to Confidential Information pursuant to ¶¶ 3 (a) - (h) if adequate procedures are utilized, which procedures will have been agreed upon by the parties and the applicable witnesses no later than five (5) days prior to the deposition.

13.    **Distribution of Confidential Information Transcripts.** The portions of any deposition transcript that Outside Counsel for either party has designated on the record at the deposition as "CONFIDENTIAL" and any Confidential Information that is marked as a deposition exhibit shall be treated as Confidential Information. Notwithstanding the foregoing,

8

the entirety of all deposition transcripts shall be deemed Confidential Information for thirty days after the transcript is delivered to the party's Outside Counsel. During the thirty day period, Outside Counsel for the party designating a transcript CONFIDENTIAL may remove the "CONFIDENTIAL" designation of any portion of the deposition transcript, by indicating page and line numbers (insofar as practicable). Transcript pages and exhibits containing Confidential Information shall be distributed only to individuals authorized to receive Confidential Information pursuant to ¶¶ 3 (a) - (h).

14.    **Presentation of Confidential Information to This Court.** With respect to testimony elicited during hearings and other proceedings, whenever Outside Counsel for any party deems that any question or line of questioning calls for the disclosure of Confidential Information, Outside Counsel may designate on the record prior to such disclosure that the disclosure is "CONFIDENTIAL." Any presentation of Confidential Information to this Court at or prior to trial shall be made in the presence of only those individuals authorized to receive Confidential Information under this Order. Prior to any presentation of Confidential Information to this Court, the presiding officer or the Clerk of this Court shall advise all court personnel and court reporters of the highly confidential nature of the Confidential Information, and of the duty to maintain the confidentiality of such information.

15.    **Escrow Agent for Source Code or Object Code.** Any party producing source code or object code ("Restricted Code") may, at its option and at its expense, produce the Restricted Code to a third-party escrow agent who will safeguard the Restricted Code while allowing access to and use of the Restricted Code by the Receiving Party in accordance with subsection (f) of this paragraph. In addition to the requirements set forth elsewhere in this Order, any person authorized under the terms of this Order to receive Restricted Code that has been

9

produced in this lawsuit must handle such Restricted Code in accordance with the following:

(a)   Access to Restricted Code is strictly limited to those authorized to view material or information that has been designated "CONFIDENTIAL."

(b)   No more than four consultants/experts for each party, after signing the Confidentiality A Agreement, may have access to Restricted Code, including, but not limited to, reviewing it and/or consulting with respect to it.

(c)   All hardcopy printouts of excerpts of Restricted Code that are not being submitted to the Court may not be copied.  Such printouts must be produced containing Bates numbers. Restricted Code produced in electronic form may not be copied unless the Producing Party specifically agrees.

d)   To the extent Restricted Code is placed on a computer, even in non-compilable form, the computer must be a stand-alone computer, which is not networked and which does not have access to the Internet, an intranet, an extranet, or the World Wide Web.  For Restricted Code produced in electronic form or on removable media (such as on a CD-ROM), a person reviewing such code may take no action intended to copy, save and/or store onto any memory device or drive the Restricted Code reviewed on such a computer where such action is for any purpose other than the immediate display and use of the code being reviewed.  Remnants of any storage of the code may not be retrieved.  Rather, the code must be viewed only from the CD-ROM.

(e)   Any Restricted Code that is produced in the lawsuit in any form cannot be copied unless the Producing Party agrees in writing;

(f)   If a party produces Restricted Code to a third-party escrow agent, such Restricted Code shall be made available during regular business hours (9:00 a.m. to 6:00 p.m. local time) on

10

twenty-four (24) hours notice at the third-party escrow agent's secure facility ("Secure Facility"). While the parties shall make their best efforts to restrict their requests to view the Restricted Code to normal business hours, access to the Secure Facility will also be provided on Saturdays and Sundays, so long as a request is made to the Producing Party by 9:00 a.m. local time on the Thursday before the weekend for which access is requested and so long as the Secure Facility can accommodate such a request. The parties agree that any Secure Facility will be located in a place that is conveniently accessible to all parties to this lawsuit. Any party viewing code outside of the normal business hours of the escrow agent shall do so at its own expense.

## GENERAL PROVISIONS

16.    **Limitation on Use and Disclosure.** A person authorized to receive Confidential Information under this Protective Order shall not use or disclose Confidential Information for any purpose other than the preparation and trial of this action and any appeals therefrom. This Order does not restrict in any manner the use or disclosure by any Designating Party of any information in its own documents and things.

17.    **No Presumption of Protected Status.** This Order does not address discovery objections and does not preclude any party from moving for any relief under the Federal Rules of Civil Procedure or this Court's inherent powers. Nothing in this Order creates a presumption or implies that information designated as Confidential Information actually constitutes a trade secret, or proprietary or otherwise protectable confidential information. If a Receiving Party believes that any information is improperly designated under this Order, it may, at any time, contest such designation. Confidential Information that is subject to such a dispute shall be treated consistently with its designation by the Designating Party until this Court orders

11

otherwise.

Upon contesting the designation and within five (5) days of receiving notice thereof, the party seeking to preserve the designation shall come forth with specific reasons it believes in good faith provide for the basis of the contested confidentiality. If the parties cannot resolve the designation contest, the party seeking protection under this Order shall within ten (10) days of receiving notice file under seal, as provided under ¶ 7, a Motion with this Court identifying with specificity the information sought to maintain confidential and the reasons therefor.

18. **Inadvertent Disclosure of Confidential Information.** Inadvertent failure to identify documents or things as Confidential Information pursuant to this Order shall not constitute a waiver of any otherwise valid claim for protection, so long as such claim is asserted within fifteen (15) days of the discovery of the inadvertent failure. At such time, arrangements shall be made for the Designating Party to appropriately mark the information in accordance with this Order. The Receiving Party shall have no liability, under this Order or otherwise, for any disclosure of information contained in documents or things not bearing a confidentiality legend occurring before the Receiving Party was placed on notice of the Designating Party's claims of confidentiality.

19. **Inadvertent Disclosure of Work Product or Privileged Information.** Inadvertent production of documents or things subject to work-product immunity or the attorney-client privilege shall not constitute a waiver of the immunity or privilege, provided that the Producing Party shall notify the Receiving Party in writing of such inadvertent production within ten (10) days after the earlier of (a) the Producing Party's discovery of the inadvertent production or (b) its use in pleadings, motions or deposition testimony by the Receiving Party. Such inadvertently produced documents and things shall be returned to the Producing Party upon

12

request. The Receiving Party shall not use the inadvertently produced documents and things during deposition or at trial and shall not show the inadvertently produced documents and things to anyone who has not already been given access to them prior to the notification of the inadvertent production. If, after conferring, the parties are unable to reach a satisfactory agreement, the Producing Party may move this Court regarding the matter, but must do so within ten (10) days after conferring with the Receiving Party. The Receiving Party shall not disclose to any person the document or thing for which the belated claim of immunity or privilege is being made, other than those persons who have had it in their possession prior to receipt of notification from the Producing Party, until ten (10) business days after receipt of the notification or, if a motion seeking the return of the inadvertently disclosed documents or information is filed with the Court, until the disposition of any such motion.

20. **Subpoena of Confidential Information.** If any entity subpoenas, orders production, or requests discovery of Confidential Information that a Receiving Party has obtained subject to this Order, the Receiving Party shall promptly notify the Designating Party of the subpoena, order, or discovery request and shall not produce the information until the Designating Party has had reasonable time (at least ten (10) days) to object or take other appropriate steps to protect the information.

21. **Mutual Exchange of Confidentiality Agreements.** The parties shall mutually exchange copies of all signed Confidentiality B Agreements. Confidentiality A Agreements of Proposed Experts shall be exchanged as provided in ¶ 9.

22. **Duty to Report.** When any attorney of record in this action or any attorney who has executed or filed a Confidentiality B Agreement becomes aware of any violation of this Order, or of a Confidentiality A or B Agreement, or of facts constituting good cause to believe

13

that a violation of this Order (or such Confidentiality Agreements) may have occurred, such attorney shall promptly report any such violation to this Court and to Outside Counsel for the Designating Party.

23.    **Continuing Jurisdiction.** After the conclusion of the above-captioned action, the provisions of this Order shall continue to be binding until further order of this Court, and this Court shall retain jurisdiction over the parties and any other person who has had access to Confidential Information pursuant to this Order, in order to enforce the provisions of this Order.

24.    **Modification.** The Court may modify this Order upon a showing of good cause.

25.    **Duty to Return Documents and Things.** Within sixty (60) days after the entry of a final non-appealable judgment or order concluding the above-captioned action or the complete settlement of all claims asserted against all parties in this action, each party shall, at its option, either return to the Designating Party or destroy all physical objects and documents that were received from the Designating Party that embody information that has been designated "CONFIDENTIAL," and shall destroy in whatever form stored or reproduced all other physical objects and documents, including but not limited to, correspondence, memoranda, notes and other work-product materials that contain or refer to information that has been designated as "CONFIDENTIAL." Outside Counsel for any party or non-party receiving Confidential Information shall provide written certification of compliance with this provision to counsel for the Designating Party within ninety (90) days after the entry of a final non-appealable judgment or order concluding this action or the complete settlement of all claims asserted against all parties in the above-captioned action. Counsel of record may retain one set of all papers filed with the Court including any Confidential Information filed under seal.

26.    **Interpretation; Headings.** Should the parties have any issues concerning the

14

interpretation of this Order, they shall endeavor to promptly meet and confer to resolve the dispute before any party moves for this Court's assistance. The headings used in this Order are supplied for convenience only and shall not be taken into account in the interpretation of this Order.

27.    **Limitations of Order.**    The restrictions set forth in any of the preceding paragraphs shall not apply to information or material that:

(a)    was, is, or becomes public in a manner other than by violation of this Order or another Protective Order concerning the litigation of DataTreasury's patents;

(b)    is acquired by the non-designating party from a third party having the right to disclose such information or material;

(c)    was already lawfully possessed by the non-designating party before the disclosure by the Designating Party; or

(d)    was independently developed by the non-designating party by personnel who did not receive or have access to the Designating Party's Confidential Information.

28.    **Preparation and Prosecution of Patent Applications.**    Any person who received any material or information designated as "CONFIDENTIAL" by another party shall not participate in a divisional, a continuation, a continuation in part, a re-issue, a re-examination, or foreign counterparts related in anyway to the patents-in-suit from the time of receipt of such material or information through and including one (1) year following the entry of a final non-appealable judgment or order or the complete settlement of all claims against all parties in this action.

15.

This the _Ninth_ day of _February_, 2006.

EDWARD L. HOHN, Attorney in Charge
State Bar No. 09813240
D. NEIL SMITH
State Bar No. 00797450
NIX PATTERSON & ROACH, L.L.P.
205 Linda Drive
Daingerfield, Texas 75638
903.645.7333 (telephone)
903.645.4415 (facsimile)
edhohn@nixlawfirm.com
dnsmith@nixlawfirm.com

C. CARY PATTERSON
State Bar No. 15587000
BRADY PADDOCK
State Bar No. 00791394
ANTHONY BRUSTER
State Bar No. 24036280
R. BENJAMIN KING
State Bar No. 24048592
NIX PATTERSON & ROACH L.L.P.
2900 St. Michael Drive, Suite 500
Texarkana, Texas 75503
903.223.3999 (telephone)
903.223.8520 (facsimile)
abbruster@nixlawfirm.com
bpaddock@nixlawfirm.com
benking@nixlawfirm.com

JOE KENDALL
State Bar No. 11260700
KARL RUPP
State Bar No. 24035243
PROVOST * UMPHREY, L.L.P.
3232 McKinney Avenue, Ste. 700
Dallas, Texas 75204
214.744.3000 (telephone)
214.744.3015 (facsimile)
jkendall@provostumphrey.com
krupp@provostumphrey.com

16

ROD COOPER
State Bar No. 90001628
THE COOPER LAW FIRM
545 E. John Carpenter Frwy., Ste. 1450
Irving, Texas 75062
972.831.1188 (telephone)
972.692.5445 (facsimile)
rcooper@cooperiplaw.com


ERIC M. ALBRITTON
State Bar No. 00790215
ALBRITTON LAW FIRM
P.O. Box 2649
Longview, Texas 75606
903.757.8449 (telephone)
903.758.7397 (facsimile)
ema@emafirm.com


T. JOHN WARD, JR.
State Bar No. 00794818
LAW OFFICE OF T. JOHN WARD, JR.
P.O. Box 1231
Longview, Texas 75601
903.757.6400 (telephone)
903.757.2323 (facsimile)
jw@jwfirm.com

17

This the 16th day of February, 2006.

_(signature)_      _by permission_

Thomas M Meisheimer
Texas State Bar No. 13922550
M. Brett Johnson
Texas State Bar No. 00790975
**Fish & Richardson - Dallas**
1717 Main St
5000 Bank One Center
Dallas, TX 75201
214/747-5070
Fax: 214/747-2091
Email: meisheimer@fr.com

Michael E. Jones
Texas State Bar No. 10929400
Earl Glenn Thames, Jr
Texas State Bar No. 007855097
**Potter Minton**
P. O. Box 359
Tyler, TX 75710
903/587-8311
Fax: 903/593-0846
glennthames@potterminton.com

Attorneys for Defendants
**Bank of America Corporation and
Bank of America National Association**

IT IS SO ORDERED.

SIGNED this 22nd day of February, 2006.


DAVID FOLSOM
UNITED STATES DISTRICT JUDGE

19

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

DATA TREASURY CORPORATION,

    Plaintiff,

    v.

BANK OF AMERICA CORPORATION;
BANK OF AMERICA, NATIONAL
ASSOCIATION,

    Defendants.

Civil Action No. 2-05CV-00292-DF

Judge T. John Ward-292

Judge Caroline Craven

## EXHIBIT A

## CONFIDENTIALITY AGREEMENT AND UNDERTAKING FOR EXPERTS RECEIVING CONFIDENTIAL INFORMATION

I, _____, state the following:

    1.    I have been retained by _____ [party] to serve as an _____ [describe proposed area of expertise, such as "database," "network process" or "financial"] in the above-captioned action.

    2.    My address is _____

_____

    3.    My present employer is and the address of my present employment is _____

_____

    4.    My present occupation or job description is _____

_____

    5.    I have received a copy of the Protective Order in this lawsuit and I have carefully read and understood the provisions of this Protective Order.

20

6.     I will comply with all of the provisions of the Protective Order.

7.     I will hold in confidence, will not disclose to anyone not qualified under the Protective Order, and will use only for purposes of this lawsuit, any Confidential information that is disclosed to me.

8.     I will advise any necessary assistant of mine, to the extent permitted under the Protective Order, the nature of any Confidential Information that I disclose to such assistant and will be responsible for assuring that such assistant complies with the same obligations of confidentiality to which I am hereby agreeing.

9.     I will return all Confidential Information that comes into my possession, and all notes, documents, or things that I prepare relating thereto, to counsel from whom I received the information.

10.     If I am given access to source code and/or object code, I agree to abide by all terms of the Protective Order concerning such code, including, but not limited to:

(a)     To the extent the source and/or object code is placed on a computer, even in non-compilable form, the computer must be a stand-alone computer, which is not networked and which does not have access to the Internet, an intranet, an extranet, or the World Wide Web. For source and/or object code produced in electronic form or on removable media (such as a CD-ROM), a person reviewing such code may take no action intended to copy, save and/or store onto any memory device or drive the source and/or object code reviewed on such a computer where such action is for any purpose other than the immediate display and use of the code being reviewed. Remnants of any storage of the code may not be retrieved. Rather, the code must be viewed only from the CD-ROM; and

(b)    I will keep any written reference to the password for such source and/or object code separate from the source and/or object code on removable media, and I agree to destroy any and all such references to the password once my review is complete.

11.    I hereby submit to the jurisdiction of the United States District Court for the Eastern District of Texas for the purpose of enforcement of this Undertaking pursuant to the Protective Order.

12.    I declare that all statements made herein are true and accurate and understand that any willful false statement is punishable by fine and/or imprisonment.

Signature_____

Printed Name_____

Address_____

Subscribed and sworn to me this _____ day of _____, 200___

Witness my hand and official seal.

Notary Public

22

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

DATA TREASURY CORPORATION,

    Plaintiff,

v.

BANK OF AMERICA CORPORATION;
BANK OF AMERICA, NATIONAL
ASSOCIATION,

    Defendants

Civil Action No. 2-05CV-00292-DF
Judge David Folsom
Judge Caroline Craven

## EXHIBIT B

## CONFIDENTIALITY AGREEMENT

I, _____, state the following:

1.     My address is _____

_____

2.     My present employer is and the address of my present employment is _____

_____

3.     My present occupation or job description is _____

_____

4.     I have received a copy of the Protective Order in this lawsuit and I have carefully read and understand the provisions of this Protective Order.

5.     I will comply with all of the provisions of the Protective Order.

6.     I attest to my understanding that access to information designated as "CONFIDENTIAL" may be provided to me and that such access shall be pursuant to the terms and conditions and restrictions of the Protective Order. I agree to be bound by the terms of the

23

Protective Order, both with respect to this Court's powers of supervision of the litigation and contractually to any Designating Party, which I acknowledge to be an expressly intended beneficiary of the undertakings I give in this Confidentiality B Agreement.

7.    I hereby submit to the jurisdiction of the United States District Court for the Eastern District of Texas for the purpose of enforcement of this Undertaking pursuant to the Protective Order.

8.    I declare that all statements made herein are true and accurate and understand that any willful false statement is punishable by fine and/or imprisonment.

Signature _____

Printed Name _____

Address _____

Subscribed and sworn to me this _____ day of _____, 200___.

Witness my hand and official seal.

Notary Public

24

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

DATATREASURY CORPORATION
*PLAINTIFF*

vs.

WELLS FARGO & COMPANY; WELLS
FARGO BANK, NATIONAL
ASSOCIATION; BANK OF AMERICA
CORPORATION; BANK OF AMERICA,
NATIONAL ASSOCIATION; U.S.
BANCORP; U.S. BANK, NATIONAL
ASSOCIATION; WACHOVIA
CORPORATION; WACHOVIA BANK,
NATIONAL ASSOCIATION; SUNTRUST
BANKS, INC.; SUNTRUST BANK; BB&T
CORPORATION; BRANCH BANKING
AND TRUST COMPANY;
BANCORPSOUTH, INC.;
BANCORPSOUTH BANK; COMPASS
BANCSHARES, INC.; COMPASS BANK;
CULLEN/FROST BANKERS, INC.; THE
FROST NATIONAL BANK; FIRST
HORIZON NATIONAL CORPORATION;
FIRST TENNESSEE BANK, NATIONAL
ASSOCIATION; HSBC NORTH
AMERICA HOLDINGS INC.; HSBC
BANK USA, N.A.; HARRIS BANKCORP,
INC.; HARRIS N.A.; NATIONAL CITY
CORPORATION; NATIONAL CITY
BANK; ZIONS BANCORPORATION;
ZIONS FIRST NATIONAL BANK;
BANK OF NEW YORK CO., INC.;
THE BANK OF NEW YORK;
UNIONBANCAL CORPORATION;
UNION BANK OF CALIFORNIA,
NATIONAL ASSOCIATION; BANK OF
TOKYO-MITSUBISHI UFJ, LTD.;
CITIZENS FINANCIAL GROUP, INC.;
CITY NATIONAL CORPORATION;
CITY NATIONAL BANK; COMERICA
INCORPORATED; COMERICA BANK
& TRUST, NATIONAL ASSOCIATION;
DEUTSCHE BANK TRUST COMPANY
AMERICAS; FIRST CITIZENS
BANCSHARES, INC.; FIRST CITIZENS
BANK & TRUST COMPANY; KEYCORP;
KEYBANK NATIONAL ASSOCIATION;
LASALLE BANK CORPORATION;
LASALLE BANK NA; M&T BANK
CORPORATION; M&T BANK; THE PNC

Civil Action No. 2:06cv72

JURY TRIAL DEMANDED

FINANCIAL SERVICES GROUP, INC.; §
PNC BANK NATIONAL ASSOCIATION §
UBS AMERICAS, INC.; SMALL VALUE §
PAYMENTS COMPANY, LLC; THE §
CLEARING HOUSE PAYMENTS §
COMPANY, LLC; MAGTEK, INC; FIRST §
DATA CORPORATION; TELECHECK §
SERVICES, INC., REMITCO, LLC and §
ELECTRONIC DATA SYSTEMS CORP. §
                                 §        JURY TRIAL DEMANDED
*DEFENDANTS*                     §

## PROTECTIVE ORDER

Pursuant to Federal Rule of Civil Procedure 26(c), the parties agree to the entry of this

Protective Order (the "Order") to facilitate and expedite discovery in this action.

IT IS ORDERED THAT:

1.    **Confidential Information.** Upon a determination by any party or non-party from

whom discovery is sought (the "Designating Party") that any documentation or thing being

produced or disclosed, whether formally or informally, including, but not limited to,

    a.        initial and supplemental disclosures;
    b.        answers to interrogatories;
    c.        documents;
    d.        transcripts of depositions;
    e.        responses to requests for admissions; and
    f.        any other discovery or disclosure made in this litigation,

contains a trade secret or other proprietary or confidential business, technical, sales, marketing,

financial, or other commercial information that the Designating Party would not disclose to third

parties or that it would cause third parties to maintain in confidence, the Designating Party may

designate such document or thing "Confidential" (collectively, "Confidential Information").

Confidential Information further includes, but is not limited to: technical information such as

product design and operation and manufacturing techniques or processing information, trade

secrets, formulas, research and development information, source code, object code, customer

2

lists, sales and cost information, and pricing information, patent license agreements, or information that was generated in connection with, or reveals the content of, patent licensing negotiations; information that a party has treated as confidential and is not subject to public disclosure; information within the definition of trade secret as set forth in Section 1(4) of the Uniform Trade Secret Act (1985); and any other information that would qualify as Confidential pursuant to Federal Rule of Civil Procedure 26(c) or any other legal standard.

Non-parties may invoke the protection of this Order for documents and deposition testimony and exhibits provided in connection with this litigation, including but not limited to documents and deposition testimony and exhibits provided in response to subpoenas served on those third parties, and all confidential information of non-parties as contained in such documents, depositions and exhibits shall be protected hereunder in the same manner as the confidential information of the parties to this lawsuit as long as the non-party agrees to be bound by this Order and those subsequent amendments to this Order concerning which the non-party has received written notice and an opportunity to seek a protective order.

The Court recognizes that there are several related actions which also address alleged infringement of the same patents implicated in this action. Confidential information secured from third parties or non-parties in the instant action may also be utilized in any such related action, so long as the related action includes a protective order affording substantially similar protections as those set out in this protective order. Likewise, confidential information produced by third parties or non-parties in such a related action, with a protective order affording substantially similar protections as those set out in this protective order, may be utilized in the instant action and shall be protected by the terms of this protective order just as if produced originally in this action.

3

2.　　**Designation.** The Designating Party shall identify such Confidential Information by affixing to it, in a manner that shall not interfere with its legibility, the words "CONFIDENTIAL," "ATTORNEYS' EYES ONLY," "PROTECTED MATERIAL," "FOR OUTSIDE COUNSEL ONLY" or "FOCO" (collectively, "CONFIDENTIAL") on all or any part of the document or thing. Any summary, compilation or copy of any document or thing so designated as "CONFIDENTIAL" shall be treated as provided by this Order. The "CONFIDENTIAL" designation shall, when practicable, be made prior to, or contemporaneously with, production or disclosure; except in the case of depositions, which shall be designated as set forth in ¶ 12. An inadvertent failure to designate Confidential Information shall be dealt with in accordance with the terms of ¶ 19.

3.　　**Use or Disclosure of Confidential Information.** No party, counsel, or other person receiving any document or thing that is designated as "CONFIDENTIAL" in accordance with ¶¶ 1 and 2 of this Order (the "Receiving Party") shall use, disclose, or permit the use or disclosure of any such Confidential Information to any other person or entity, except to the following:

　　a.　　This Court and its personnel consistent with the terms of ¶¶ 7 and 14.

　　b.　　Outside Counsel for the respective parties in the above-identified litigation and in other litigation brought by DataTreasury concerning the patents-in-suit and their clerical, litigation support and paralegal employees. As used herein "Outside Counsel" shall mean attorneys in the respective firms for the respective parties.

　　c.　　Any Expert retained by, or at the direction of, Outside Counsel solely for the purpose of advising and assisting such counsel in the preparation or trial of this action, subject to ¶¶ 8 and 9.

4.

  d.  Court reporters taking testimony and their necessary stenographic, videographic, and clerical personnel.

  e.  Interpreters and translators retained by Outside Counsel for the purpose of this action, subject to ¶ 10.

  f.  Consistent with ¶ 11, any deponent who is not an agent, officer or employee of, or expert to the Receiving Party except as authorized by ¶ 3(c).

  g.  Attorneys in the Receiving Party's legal department, provided that, in the good faith judgment of the Receiving Party's Outside Counsel, the attorneys are reasonably necessary to that party's prosecution or defense of this action. Each party shall designate the attorneys who will receive documents and things under this paragraph and must notify the Designating Party of the identities of each such employee at least eight (8) business days before the disclosure of Confidential Information to such attorneys. No disclosure of Confidential Information shall be made to other employees who are not otherwise authorized to receive Confidential Information under this Order.

  h.  Personnel of third party vendors engaged by a party or by Outside Counsel for a party to assist in (i) the coding, imaging or other management of documents produced in discovery in this litigation; (ii) the preparation of demonstrative exhibits or other visual aids for presentation at a hearing or trial; or (iii) jury research and analysis, provided that such personnel of third party vendors shall not be employees of a party.

  4.  **Undertaking.** Prior to any disclosure pursuant to ¶ 3(c), and authorized pursuant to ¶¶ 8 and 9, each testifying and consulting Expert to whom such disclosure is to be made shall execute the Confidentiality Agreement annexed hereto as Exhibit A ("Confidentiality Agreement"). Outside Counsel to whom any disclosure is made pursuant to ¶ 3(b) and each

5

person to whom any disclosure is made pursuant to ¶¶ 3(e), 3(g) or 3(h) shall execute the Confidentiality Agreement annexed hereto as Exhibit B ("Confidentiality B Agreement"). The Confidentiality Agreements shall be maintained by Outside Counsel for the Receiving Party with whom such persons are affiliated or by whom they are retained, and such counsel shall provide a copy of each executed Confidentiality A or B Agreement to all counsel of record. Further, prior to disclosure to any duly authorized deponent to whom disclosure is made pursuant to ¶ 3(f), each such deponent shall execute, as appropriate, a Confidentiality A or B Agreement. Such Confidentiality Agreements executed by a deponent shall be retained by the party first noticing the deposition.

5.     **Outside Counsel's Communication with Client.** Nothing in this Order shall preclude or impede Outside Counsel's ability to communicate with or advise his or her client based on his or her review and evaluation of Confidential Information produced by the opposing party, provided that such communications or advice shall not disclose or reveal such Confidential Information.

6.     **Disclosure to Author or Recipient.** Notwithstanding any other provisions, nothing in this Order shall prohibit Outside Counsel for a party from disclosing a document or thing designated as "CONFIDENTIAL" to any person whom the document or thing clearly identifies as an author, addressee or carbon copy recipient of such document or thing. Regardless of its designation, if a document or thing makes reference to the actual or alleged conduct or statements of a person, Outside Counsel may discuss such conduct or statements with such person, provided that such discussions do not directly or indirectly disclose or reveal any portion of the document or thing other than that which specially refers to such conduct or statement. Nothing herein is intended to permit counsel to contact an employee of the other

6

party or any other person who is represented by counsel.

7. **Filings with This Court.** To the extent that any documents, information, or things designated as "CONFIDENTIAL" are to be filed with this Court, each such document and thing shall be filed under seal with the Clerk of this Court in accordance with Local Rule CV-5(a)(7).

Notwithstanding the provisions of this ¶ 7, the mere inclusion in a pleading of factual information derived from documents or things designated "CONFIDENTIAL" will not require that pleading be filed under seal if the parties agree in writing prior to filing the pleading that the factual information actually contained in that pleading would not itself be properly subject to such designation.

8. **Disclosure to Experts.** Subject to ¶ 9, Outside Counsel for the Receiving Party may disclose Confidential Information to Experts who are assisting in the preparation for and/or trial of this action. Prior to disclosing any Confidential Information to any Expert, Outside Counsel for the Receiving Party shall determine that disclosure to an Expert of particular Confidential Information is, in that counsel's good faith judgment, reasonably necessary to the Receiving Party's prosecution or defense of this action.

9. **Opportunity to Object to Proposed Expert.** At least eight (8) business days prior to disclosure of any of the Designating Party's Confidential Information to an Expert, the Receiving Party shall provide the Designating Party written notice stating the name and address of the Expert; a copy of the Expert's Confidentiality A Agreement; a copy of the Expert's current resume showing his/her education and employment for the last four (4) years; and a list of the Expert's patents and/or publications for the last ten (10) years (Expert's Background Information).

(a)   If, within the eight (8) business day period, the Designating Party objects to the proposed disclosure to the Expert, the Parties shall proceed to resolve the matter informally.   Within five (5) days of making an objection, the Parties shall agree on how to proceed or the objecting party may file a Motion with this Court identifying the ground for the objection and the Expert's background information.

(b)   Disclosure shall not be made until and unless this Court orders disclosure to that Expert.  This Court shall deny the Designating Party's objection unless the Designating Party shows good cause why the proposed disclosure should not be permitted;

(c)   If the objecting party does not file a Motion within five (5) days of making an objection to the disclosure, the objection shall be deemed waived and the Receiving Party shall be allowed to disclose the Confidential Information to the Expert.

10.   **Opportunity to Object to Proposed Interpreter or Translator**.   At least eight (8) business days prior to disclosure of any of the Designating Party's Confidential Information to an interpreter or translator, the Receiving Party shall provide the Designating Party written notice stating the name and address of the interpreter or translator; a copy of the interpreter's or translator's Confidentiality B Agreement; and a copy of the interpreter's or translator's current resume showing his/her education and certifications, employment and professional activities.  If, within the eight (8) business day period, the Designating Party objects to the proposed disclosure to the interpreter or translator, disclosure shall not be made until and unless this Court orders disclosure to that interpreter or translator.  This Court shall deny the Designating Party's objection unless the Designating Party shows good cause why the proposed disclosure should not

8

be permitted.

11.    **Use of Confidential Information at Depositions.** Except as otherwise approved by the Designating Party or by an order of this Court, a Receiving Party may use Confidential Information in deposing only (a) an individual who has had or who is eligible to have access to the Confidential Information by virtue of his or her employment with the Designating Party, (b) an individual identified in the Confidential Information as an author, addressee, or copy recipient of such information, (c) an individual who, although not identified as an author, addressee, or copy recipient of such Confidential Information, has seen such Confidential Information in the ordinary course of business, or (d) an Expert duly qualified under ¶¶ 8 and 9 (who shall first have executed the Confidentiality Agreement).

12.    **Attendees at Confidential Information Depositions and Designations of Deposition Testimony.** No one may attend, view, or review the transcripts of the portions of any depositions at which Confidential Information is shown or discussed, other than those persons authorized to have access to Confidential Information pursuant to ¶¶ 3 (a) - (h). Such depositions shall be designated as "CONFIDENTIAL" as soon as practicable by stating in the record such designation. Subject to the provisions of this Order, the parties agree that certain deposition testimony may be transmitted via a live webcast or other technology to persons authorized to have access to Confidential Information pursuant to ¶¶ 3 (a) - (h) if adequate procedures are utilized, which procedures will have been agreed upon by the parties and the applicable witnesses no later than five (5) days prior to the deposition.

13.    **Distribution of Confidential Information Transcripts.** The portions of any deposition transcript that Outside Counsel for either party has designated on the record at the deposition as "CONFIDENTIAL" and any Confidential Information that is marked as a

9.

deposition exhibit shall be treated as Confidential Information. Notwithstanding the foregoing, the entirety of all deposition transcripts shall be deemed Confidential Information for thirty days after the transcript is delivered to the party's Outside Counsel. During the thirty day period, Outside Counsel for the party designating a transcript CONFIDENTIAL may remove the "CONFIDENTIAL" designation of any portion of the deposition transcript, by indicating page and line numbers (insofar as practicable). Transcript pages and exhibits containing Confidential Information shall be distributed only to individuals authorized to receive Confidential Information pursuant to ¶¶ 3 (a) - (h).

14.    **Presentation of Confidential Information to This Court.** With respect to testimony elicited during hearings and other proceedings, whenever Outside Counsel for any party deems that any question or line of questioning calls for the disclosure of Confidential Information, Outside Counsel may designate on the record prior to such disclosure that the disclosure is "CONFIDENTIAL." Any presentation of Confidential Information to this Court at or prior to trial shall be made in the presence of only those individuals authorized to receive Confidential Information under this Order. Prior to any presentation of Confidential Information to this Court, the presiding officer or the Clerk of this Court shall advise all court personnel and court reporters of the highly confidential nature of the Confidential Information, and of the duty to maintain the confidentiality of such information.

15.    **Escrow Agent for Source Code or Object Code.** Any party producing source code or object code ("Restricted Code") may, at its option and at its expense, produce the Restricted Code to a third-party escrow agent who will safeguard the Restricted Code while allowing access to and use of the Restricted Code by the Receiving Party in accordance with subsection (f) of this paragraph. In addition to the requirements set forth elsewhere in this Order,

any person authorized under the terms of this Order to receive Restricted Code that has been produced in this lawsuit must handle such Restricted Code in accordance with the following:

(a)    Access to Restricted Code is strictly limited to those authorized to view material or information that has been designated "CONFIDENTIAL."

(b)    No more than four consultants/experts for each party, after signing the Confidentiality Agreement, may have access to Restricted Code, including, but not limited to, reviewing it and/or consulting with respect to it.

(c)    All hardcopy printouts or excerpts of Restricted Code that are not being submitted to the Court may not be copied. Such printouts must be produced containing Bates numbers. Restricted Code produced in electronic form may not be copied unless the Producing Party specifically agrees.

d)    To the extent Restricted Code is placed on a computer, even in non-compilable form, the computer must be a stand-alone computer, which is not networked and which does not have access to the Internet, an intranet, an extranet, or the World Wide Web. For Restricted Code produced in electronic form or on removable media (such as on a CD-ROM), a person reviewing such code may take no action intended to copy, save and/or store onto any memory device or drive the Restricted Code reviewed on such a computer where such action is for any purpose other than the immediate display and use of the code being reviewed. Remnants of any storage of the code may not be retrieved. Rather, the code must be viewed only from the CD-ROM.

(e)    Any Restricted Code that is produced in the lawsuit in any form cannot be copied unless the Producing Party agrees in writing.

(f)    If a party produces Restricted Code to a third-party escrow agent, such Restricted

Code shall be made available during regular business hours (9:00 a.m. to 6:00 p.m. local time) on twenty-four (24) hours notice at the third-party escrow agent's secure facility ("Secure Facility"). While the parties shall make their best efforts to restrict their requests to view the Restricted Code to normal business hours, access to the Secure Facility will also be provided on Saturdays and Sundays, so long as a request is made to the Producing Party by 9:00 a.m. local time on the Thursday before the weekend for which access is requested and so long as the Secure Facility can accommodate such a request. The parties agree that any Secure Facility will be located in a place that is conveniently accessible to all parties to this lawsuit. Any party viewing code outside of the normal business hours of the escrow agent shall do so at its own expense.

## GENERAL PROVISIONS

16.　**Limitation on Use and Disclosure.** A person authorized to receive Confidential Information under this Protective Order shall not use or disclose Confidential Information for any purpose other than the preparation and trial of this action and any appeals therefrom. This Order does not restrict in any manner the use or disclosure by any Designating Party of any information in its own documents and things.

17.　**No Presumption of Protected Status.** This Order does not address discovery objections and does not preclude any party from moving for any relief under the Federal Rules of Civil Procedure or this Court's inherent powers. Nothing in this Order creates a presumption or implies that information designated as Confidential Information actually constitutes a trade secret or proprietary or otherwise protectable confidential information. If a Receiving Party believes that any information is improperly designated under this Order, it may, at any time, contest such designation. Confidential Information that is subject to such a dispute

12

shall be treated consistently with its designation by the Designating Party until this Court orders otherwise.

Upon contesting the designation and within five (5) days of receiving notice thereof, the party seeking to preserve the designation shall come forth with specific reasons it believes in good faith provide for the basis of the contested confidentiality. If the parties cannot resolve the designation contest, the party seeking protection under this Order shall within ten (10) days of receiving notice file under seal, as provided under ¶ 7, a Motion with this Court identifying with specificity the information sought to maintain confidential and the reasons therefor.

18.    **Inadvertent Disclosure of Confidential Information.**    Inadvertent failure to identify documents or things as Confidential Information pursuant to this Order shall not constitute a waiver of any otherwise valid claim for protection, so long as such claim is asserted within fifteen (15) days of the discovery of the inadvertent failure. At such time, arrangements shall be made for the Designating Party to appropriately mark the information in accordance with this Order. The Receiving Party shall have no liability under this Order or otherwise, for any disclosure of information contained in documents or things not bearing a confidentiality legend occurring before the Receiving Party was placed on notice of the Designating Party's claims of confidentiality.

19.    **Inadvertent Disclosure of Work Product or Privileged Information.** Inadvertent production of documents or things subject to work-product immunity or the attorney-client privilege shall not constitute a waiver of the immunity or privilege, provided that the Producing Party shall notify the Receiving Party in writing of such inadvertent production within ten (10) days after the earlier of (a) the Producing Party's discovery of the inadvertent production or (b) its use in pleadings, motions or deposition testimony by the Receiving Party. Such

inadvertently produced documents and things shall be returned to the Producing Party upon request. The Receiving Party shall not use the inadvertently produced documents and things during deposition or at trial and shall not show the inadvertently produced documents and things to anyone who has not already been given access to them prior to the notification of the inadvertent production. If, after conferring, the parties are unable to reach a satisfactory agreement, the Producing Party may move this Court regarding the matter, but must do so within ten (10) days after conferring with the Receiving Party. The Receiving Party shall not disclose to any person the document or thing for which the belated claim of immunity or privilege is being made, other than those persons who have had it in their possession prior to receipt of notification from the Producing Party, until ten (10) business days after receipt of the notification or, if a motion seeking the return of the inadvertently disclosed documents or information is filed with the Court, until the disposition of any such motion.

20.     **Subpoena of Confidential Information.**  If any entity subpoenas, orders production, or requests, discovery of Confidential Information that a Receiving Party has obtained subject to this Order, the Receiving Party shall promptly notify the Designating Party of the subpoena, order, or discovery request and shall not produce the information until the Designating Party has had reasonable time (at least ten (10) days) to object or take other appropriate steps to protect the information.

21.     **Mutual Exchange of Confidentiality Agreements.**  The parties shall mutually exchange copies of all signed Confidentiality B Agreements. Confidentiality A Agreements of Proposed Experts shall be exchanged as provided in ¶ 9.

22.     **Duty to Report.**  When any attorney of record in this action or any attorney who has executed or filed a Confidentiality B Agreement becomes aware of any violation of this

14

Order, or of a Confidentiality A or B Agreement, or of facts constituting good cause to believe that a violation of this Order (or such Confidentiality Agreements) may have occurred, such attorney shall promptly report any such violation to this Court and to Outside Counsel for the Designating Party.

23. **Continuing Jurisdiction.** After the conclusion of the above-captioned action, the provisions of this Order shall continue to be binding until further order of this Court, and this Court shall retain jurisdiction over the parties and any other person who has had access to Confidential Information pursuant to this Order, in order to enforce the provisions of this Order.

24. **Modification.** The Court may modify this Order upon a showing of good cause.

25. **Duty to Return Documents and Things.** Within sixty (60) days after the entry of a final non-appealable judgment or order concluding the above-captioned action or the complete settlement of all claims asserted against all parties in this action, each party shall, at its option, either return to the Designating Party or destroy all physical objects and documents that were received from the Designating Party that embody information that has been designated "CONFIDENTIAL," and shall destroy in whatever form stored or reproduced all other physical objects and documents, including but not limited to, correspondence, memoranda, notes and other work-product materials that contain or refer to information that has been designated as "CONFIDENTIAL." Outside Counsel for any party or non-party receiving Confidential Information shall provide written certification of compliance with this provision to counsel for the Designating Party within ninety (90) days after the entry of a final non-appealable judgment or order concluding this action or the complete settlement of all claims asserted against all parties in the above-captioned action. Counsel of record may retain one set of all papers filed with the Court including any Confidential Information filed under seal.

26.    **Interpretation; Headings.** Should the parties have any issues concerning the interpretation of this Order, they shall endeavor to promptly meet and confer to resolve the dispute before any party moves for this Court's assistance. The headings used in this Order are supplied for convenience only and shall not be taken into account in the interpretation of this Order.

27.    **Limitations of Order.** The restrictions set forth in any of the preceding paragraphs shall not apply to information or material that:

(a)    was, is, or becomes public in a manner other than by violation of this Order or another Protective Order concerning the litigation of DataTreasury's patents;

(b)    is acquired by the non-designating party from a third party having the right to disclose such information or material;

(c)    was already lawfully possessed by the non-designating party before the disclosure by the Designating Party; or

(d)    was independently developed by the non-designating party by personnel who did not receive or have access to the Designating Party's Confidential Information.

28.    **Preparation and Prosecution of Patent Applications.** Any person who received any material or information designated as "CONFIDENTIAL" by another party shall not participate in a divisional, a continuation, a continuation in part, a re-issue, a re-examination, or foreign counterparts related in anyway to the patents-in-suit from the time of receipt of such material or information through and including one (1) year following the entry of a final non-appealable judgment or order or the complete settlement of all claims against all parties in this action.

16

SO ORDERED:

SIGNED this 20th day of November, 2006.

DAVID FOLSOM
UNITED STATES DISTRICT JUDGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

DATA TREASURY CORPORATION,

        Plaintiff,

v.

        Defendants

Civil Action No.
Judge David Folsom
Judge Caroline Craven

### EXHIBIT A

### CONFIDENTIALITY AGREEMENT AND UNDERTAKING FOR EXPERTS RECEIVING CONFIDENTIAL INFORMATION

I, _____, state the following:

1.   I have been retained by _____ [party] to serve as an _____ [describe proposed area of expertise, such as "database," "network process" or "financial"] in the above-captioned action.

2.   My address is _____

_____

3.   My present employer is and the address of my present employment is _____

_____

4.   My present occupation or job description is: _____

_____

5.   I have received a copy of the Protective Order in this lawsuit and I have carefully read and understood the provisions of this Protective Order.

6.   I will comply with all of the provisions of the Protective Order.

7.     I will hold in confidence, will not disclose to anyone not qualified under the Protective Order, and will use only for purposes of this lawsuit, any Confidential Information that is disclosed to me.

8.     I will advise any necessary assistant of mine, to the extent permitted under the Protective Order, the nature of any Confidential Information that I disclose to such assistant and will be responsible for assuring that such assistant complies with the same obligations of confidentiality to which I am hereby agreeing:

9.     I will return all Confidential Information that comes into my possession, and all notes, documents, or things that I prepare relating thereto, to counsel from whom I received the information.

10.     If I am given access to source code and/or object code, I agree to abide by all terms of the Protective Order concerning such code, including, but not limited to:

(a)     To the extent the source and/or object code is placed on a computer, even in non-compilable form, the computer must be a stand-alone computer, which is not networked and which does not have access to the Internet, an intranet, an extranet, or the World Wide Web. For source and/or object code produced in electronic form or on removable media (such as a CD-ROM), a person reviewing such code may take no action intended to copy, save and/or store onto any memory device or drive the source and/or object code reviewed on such a computer where such action is for any purpose other than the immediate display and use of the code being reviewed. Remnants of any storage of the code may not be retrieved. Rather, the code must be viewed only from the CD-ROM; and

19

(b)   I will keep any written reference to the password for such source and/or object code separate from the source and/or object code on removable media, and I agree to destroy any and all such references to the password once my review is complete.

11.   I hereby submit to the jurisdiction of the United States District Court for the Eastern District of Texas for the purpose of enforcement of this Undertaking pursuant to the Protective Order.

12.   I declare that all statements made herein are true and accurate and understand that any willful false statement is punishable by fine and/or imprisonment.

Signature_____

Printed Name:_____

Address:_____

Subscribed and sworn to me this _____ day of _____, 200___.

Witness my hand and official seal.

Notary Public

20

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

DATA TREASURY CORPORATION,

       Plaintiff,

v.

       Defendants

Civil Action No.
Judge David Folsom
Judge Caroline Craven

## EXHIBIT B

## CONFIDENTIALITY AGREEMENT

I, _____ state the following::

1.    My address is _____

_____

2.    My present employer is and the address of my present employment is _____

_____

3.    My present occupation or job description is _____

_____

4.    I have received a copy of the Protective Order in this lawsuit and I have carefully read and understand the provisions of this Protective Order.

5.    I will comply with all of the provisions of the Protective Order.

6.    I attest to my understanding that access to information designated as "CONFIDENTIAL" may be provided to me and that such access shall be pursuant to the terms and conditions and restrictions of the Protective Order. I agree to be bound by the terms of the Protective Order, both with respect to this Court's powers of supervision of the litigation and

contractually to any Designating Party, which I acknowledge to be an expressly intended beneficiary of the undertakings I give in this Confidentiality B Agreement.

7.     I hereby submit to the jurisdiction of the United States District Court for the Eastern District of Texas for the purpose of enforcement of this Undertaking pursuant to the Protective Order.

8.     I declare that all statements made herein are true and accurate and understand that any willful false statement is punishable by fine and/or imprisonment.

Signature_____

Printed Name_____

Address_____

Subscribed and sworn to me this _____ day of _____, 200___.

Witness my hand and official seal.

Notary Public

# EXHIBIT B

**TO THE PNC FINANCIAL SERVICES GROUP, INC.'S MOTION TO QUASH**
**SUBPOENA FOR PRODUCTION OF DOCUMENTS AND FOR A PROTECTIVE ORDER**



**NIX**
**PATTERSON**
**& ROACH,** LLP

ANTHONY K. BRUSTER
*LICENSED IN TEXAS, ARKANSAS,*
*LOUISIANA & NEW MEXICO*

MONI CELESTE KING
*Sr. Paralegal*

August 14, 2008

**Via Electronic Mail**

Mr. Tom Melsheimer
**FISH & RICHARDSON, P.C.**
1717 Main Street, Suite 5000
Dallas, Texas 75201

     Re:    *DataTreasury v. Bank of America Corporation, et al*; 2:05cv292

Dear Tom:

    On July 23, 2008, your firm provided us with copies of subpoenas that you served on DataTreasury's licensees Merrill Lynch and Edward Jones. However, it has come to our attention that your firm also recently subpoenaed documents from another DataTreasury Licensee – PNC Financial Services Group, Inc. We have obtained a copy of that subpoena through another source, and it bears the exact same date as the Merrill Lynch and Edward Jones subpoenas. *See Attached.* What is troubling, however, is that we have no record of ever receiving from Fish & Richardson a copy of that subpoena to PNC.

    I hope that you can provide us with documented confirmation that you actually did copy us with the PNC subpoena, too, and that it somehow didn't get to us because of internet problems or some similarly innocuous cause. If instead Fish & Richardson simply did not copy us with this subpoena, this is troubling, because this is an issue we have addressed at least two other times in this litigation after Fish & Richardson earlier failed to copy us with subpoenas that were served to third parties for production of documents. After each such instance we were given to understand that the oversight which had led to service of a third party subpoena without copying DataTreasury would be corrected, and would not recur. Can and will Fish & Richardson undertake an audit of all third-party subpoenas served throughout this litigation and verify in writing that there are no others which have been served, but not copied to DataTreasury? In addition, if you determine that this is an additional instance where DataTreasury was simply not provided a copy of such subpoenas, can some system possibly be enacted by Fish & Richardson to ensure this does not keep happening?

    I'm sure PNC will be addressing with and to you the other problems posed by the subpoena – for example, the fact that your subpoena is a public document and improperly discloses a confidential settlement amount that was obtained by Fish & Richardson from a confidentially-

Mr. Tom Melsheimer
August 14, 2008
Page 2 of 2

marked document. I trust that you are already taking steps to correct this surprising breach of the Protective Order pursuant to which this information was disclosed to Fish & Richardson.

I look forward to hearing from you soon concerning our most immediate concern – the apparent failure to serve upon any DataTreasury counsel a copy of the PNC subpoena.

Very truly yours,

Anthony K. Bruster

AKB:mck
cc:    DataTreasury Listserve

**Attorneys At Law** 5215 N. O'Connor Blvd. · Suite 1900 · Irving, TX 75039 · 972.831.1188 · 972.444.0716 Fax · www.nixlawfirm.com

AUSTIN, TX 512.328.5333 · DAINGERFIELD, TX 903.645.7333 · TEXARKANA, TX 903.223.3999 · SHREVEPORT, LA 318.425.9255 · JACKSON, TN 731.512.0283

# EXHIBIT C

**TO THE PNC FINANCIAL SERVICES GROUP, INC.'S MOTION TO QUASH**
**<u>SUBPOENA FOR PRODUCTION OF DOCUMENTS AND FOR A PROTECTIVE ORDER</u>**

# HOWREY LLP

4 Park Plaza
Suite 1700
Irvine, CA 92614-8557
www.howrey.com

**William C. Rooklidge**
Partner
T 949.759.3904
F 949.721.6910
rooklidgew@howrey.com

August 19, 2008

***BY FACSIMILE AND REGULAR MAIL***

Kelly Vickers, Esq.
Fish & Richardson
1717 Main Street, Suite 5000
Dallas, TX 75201

Re:   Subpoena to The PNC Financial Services Group, Inc., in *DataTreasury*
      *Corp. v. Bank of America, et al.* (Case No. 2:05-cv-292 (E.D. Tex.)

Dear Kelly:

Thank you for taking my July 29, 2008 telephone call regarding Bank of America's subpoena to The PNC Financial Services Group, Inc. During that call I explained that you had issued the subpoena out of the wrong court because PNC is a Pennsylvania corporation headquartered in Pittsburgh and any documents would be stored in Pittsburgh, approximately 300 miles away from, and in a judicial district different from, where the subpoena was issued and the production was demanded. I also objected to the subpoena's inclusion of confidential information in request nos. 11-12. I asked where you obtained the settlement agreement, and you explained that you got it from DataTreasury. I explained that Bank of American should obtain any documents it needs regarding the settlement from DataTreasury, who is a party to Bank of America's litigation, not PNC, who is not. Finally, I objected that the scope of the subpoena was overbroad.

We have notified DataTreasury of Bank of America's subpoena as required by PNC's agreement. Yesterday DataTreasury confirmed that it produced the PNC settlement agreement (FOCO D303033-38) as "FOCO" (for outside counsel only) under the protective order in *DataTreasury Corp. v. Bank of America, et al.* (Case No. 2:05-cv-292 (E.D. Tex.). On Saturday, DataTreasury confirmed that Bank of America never served DataTreasury with a copy of the PNC subpoena. I understand that DataTreasury raised both these objections in Anthony Bruster's August 14, 2008 letter to Tom Melsheimer of your firm.

In addition to violating the protective order, Bank of America's subpoena is invalid, both for being issued from the wrong court under Fed. R. Civ. P. 45(c)(3)(A)(ii) (requiring document production within 100 miles of where PNC "resides, is employed, or regularly transacts business in person") and for not being served on DataTreasury under Fed. R. Civ. P. 45(b)(1). Please withdraw that subpoena immediately and identify any individuals or entities (other than those allowed access under the protective order) to whom Bank of America or its counsel have disclosed the subpoena.

AMSTERDAM  BRUSSELS  CHICAGO  EAST PALO ALTO  HOUSTON  IRVINE  LONDON  LOS ANGELES
MADRID  MUNICH  NEW YORK  NORTHERN VIRGINIA  PARIS  SALT LAKE CITY  SAN FRANCISCO  TAIPEI  WASHINGTON, DC



Kelly Vickers, Esq.
August 19, 2008
Page 2

    Should Bank of America decide to issue a new subpoena (in the right court, with notice to DataTreasury, and without PNC's confidential information), please call me first.  PNC has concerns about the scope and burden of the requested production and the interpretation of some of the requests, particularly in light of the lack of relevance of the requested documents to either PNC's settlement with DataTreasury or the claims and defenses in Bank of America's litigation with DataTreasury, concerns that could well be alleviated by a short discussion.  In the meantime, please call me if you have any questions.

                  Very truly yours,

                  William C. Rooklidge

WCR:sjw

# HOWREY LLP

4 PARK PLAZA
SUITE 1700
IRVINE, CA 92614
PHONE: 949.721.6900 • FAX: 949.721.6910

## FACSIMILE COVER SHEET

**DATE:** August 19, 2008

**TO:**

| | |
|---|---|
| NAME: | Kelly Vickers, Esq. |
| COMPANY: | Fish & Richardson |
| FAX NUMBER | 214/747-2091 |
| CITY: | Dallas |

PHONE NUMBER: 214/747-5070

**FROM:**

| | |
|---|---|
| NAME: | William C. Rooklidge, Esq. |
| DIRECT DIAL NUMBER: | 949/759-3904 |

USER ID: 5156

NUMBER OF PAGES, *INCLUDING* COVER: 3

CHARGE NUMBER: 04861.0005.000000

☒ ORIGINAL WILL FOLLOW VIA:

☒ REGULAR MAIL    ☐ OVERNIGHT DELIVERY    ☐ HAND DELIVERY    ☐ OTHER: _____

☐ ORIGINAL WILL NOT FOLLOW

**SUPPLEMENTAL MESSAGE:**

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.

# MESSAGE CONFIRMATION

08/19/08      14:55
ID=HOWREY SIMON

| NO. | MODE | BOX | GROUP |
|-----|------|-----|-------|
| 904 | TX | | |

| DATE/TIME | TIME | DISTANT STATION ID | PAGES | RESULT | ERROR PAGES | S. CODE |
|-----------|------|--------------------|----|----|-----------|---------|
| 08/19  14:54 | 00'55" | 214 747 2091 | 003/003 | OK | | .0000 |

## CERTIFICATE OF SERVICE

Kurt M. Heyman, Esquire hereby certifies that on August 22, 2008, copies of the foregoing Motion to Quash Subpoena for Production of Documents and for a Protective Order were served as follows:

**VIA E-MAIL &
FEDERAL EXPRESS**

Kelly R. Vickers, Esquire
Fish & Richardson P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201


*/s/ Kurt M. Heyman*
Kurt M. Heyman (# 3054)

IN THE UNITED STATES DISTRICT COURT

FOR DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE SUBPOENA ISSUED TO <br> THE PNC FINANCIAL SERVICES GROUP, INC. : | Misc. No. _____ |
| _____ : | |
| DATATREASUREY CORPORATION, : | |
| Plaintiff, : | |
| v. : | C.A. No. 2:05-cv-292 (E.D. Tex.) |
| BANK OF AMERICA, *et al.* : | |
| Defendants. : | |
| _____ : | |
| DATATREASURY CORPORATION, : | |
| Plaintiff, : | |
| v. : | C.A. No. 2:06-cv-72 (E.D. Tex.) |
| WELLS FARGO COMPANY, *et al.* : | |
| Defendants. : | |

## ORDER

The Court having considered The PNC Financial Group, Inc.'s Motion to Quash Subpoena for Production fo Documents and for a Protective Order, and having found good cause therefor,

IT IS HEREBY ORDERED that the Motion is GRANTED.

_____
U.S.D.J.

Date:_____